**Russell B. McBROOM et al., Plaintiffs,**

v.

**WESTERN ELECTRIC COMPANY, INC., et al., Defendants.**

No. C–362–G–73.

United States District Court,
M. D. North Carolina,
Greensboro Division.

April 4, 1977.

---

J. LeVonne Chambers, Adam Stein, Charles Becton and Jonathan Wallas, Charlotte, N. C., for plaintiffs.

Thornton H. Brooks, Greensboro, N. C., for Western Elec.

James B. Ledford, Charlotte, N. C., and Patrick M. Scanlon, Atlanta, Ga., for the Unions.

## MEMORANDUM AND ORDER

GORDON, Chief Judge.

This matter is before the Court on the issue of defining the class to be represented by the named plaintiffs. At the final pretrial conference counsel for the parties reported that previous to the conference counsel had discussed the fact that the order of this Court declaring the matter to be a class action did not contain a cut-off date as part of the definition of the class. Counsel offered to confer in an attempt to agree on an appropriate date and, in the event that agreement could not be reached, to submit briefs to the Court setting forth their respective positions. Agreement was not forthcoming and, therefore, briefs have been filed by the plaintiffs, the defendant company, and the defendant unions.

The plaintiffs are seeking relief under the provisions of 42 U.S.C. § 1981 and 42 U.S.C. § 2000e *et seq.* (Title VII of the 1964 Civil Rights Act, as amended). The positions of the parties on the cut-off date issue as to the Title VII claims of the plaintiffs are as follows:

The plaintiffs contend that any black applicant or employee affected by the defendants' racially discriminatory practices, if such practices are found to exist, at anytime during the period from August 19, 1967 (two years prior to the filing of the first complaint with the Equal Employment Opportunities Commission) through the date of the defendants' implementation of a decree in this matter should be allowed to participate in the class. They further contend that any limitation with respect to individual relief should await further hearings in the case which would occur after a finding of discrimination by the Court, if such a finding is made.

The defendant company asserts that black applicants and employees whose claims matured more than ninety days before the first complaint of discrimination was filed with the Equal Employment Opportunities Commission (E.E.O.C.) by a named plaintiff (August 19, 1969) and whose claims were not continuing violations should be prohibited from participating in the class. Defendant company contends that the filing of the August 19, 1969, complaint cannot revive a stale claim and that only black applicants for employment and black employees as of and subsequent to May 17, 1969, can participate as class members.

The defendant unions apply the same theory as the defendant company but submit that the first charge against the unions was not filed with the E.E.O.C. by a named plaintiff until February 3, 1971. The defendant unions, therefore, maintain that, as to any Title VII claims against them, only black applicants for employment and black employees as of and subsequent to November 30, 1970, can participate as class members.

■ The general legislative history and underlying theory supporting Title VII favor the position of the plaintiffs. In enacting Title VII, Congress sought to eliminate a pervasive, objectionable history of denying or limiting one's livelihood simply because of one's race, color, sex, religion, or national origin. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). Despite the known limitations, Congress initially placed the burden for the enforcement of the Act upon the victims of discrimination and the federal courts. The 1972 Amendments authorized the E.E.O.C. to institute civil proceedings in the federal courts but retained the right for private litigation. 42 U.S.C. § 2000e–5(f)(1).

■ In order to implement the Congressional objective, the courts have allowed Title VII proceedings to be maintained as class actions and have authorized class injunctive relief and back pay even though all members of the class have not filed charges with the E.E.O.C. or exhausted the administrative procedures of the Act. *Albemarle Paper Co. v. Moody, supra,* and particularly Note 8 at 422 U.S. 414, 95 S.Ct. 2362. The critical factor is the exhaustion of the administrative provisions by at least one class member. Once that has occurred, the class member may then invoke the jurisdiction of

the court and proceed to represent all persons similarly situated. In such cases, courts have the authority to address systematic and ongoing practices applied by employers to all black applicants and employees because of their race or color, pursuant to the provisions of Rule 23, Federal Rules of Civil Procedure. When such class standing is achieved, the individual claims are merged into the more pervasive practices and the courts, upon proper findings, may properly enjoin all such practices.

When a court considers an individual claim brought under Title VII, relevant dates, the nature of the alleged discriminatory acts, and the complaint procedure followed by the claimant are relevant for the purpose of determining jurisdiction and the relief which may be awarded should the individual prevail. Clearly, if no member of an alleged class has properly invoked the jurisdiction of the court, then the court is powerless to act. The record in this case, however, reveals that there are named plaintiffs who appear to have successfully met the jurisdictional requirements.

With respect to the relief which an individual claimant may receive, the Congress has established cut-off limits. If discrimination is found, back pay may not be awarded under Title VII for more than two years prior to the first charge filed with the Equal Employment Opportunities Commission. 42 U.S.C. § 2000e–5(f)(1). Within the limitations on relief expressly established by Title VII, the jurisdiction of the courts is broad, once a violation has been found, for the remedy must be designed to implement the purposes of the Fair Employment Practices Act. *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); *Albemarle Paper Co. v. Moody, supra.*

The defendants assert that the relevant time period for purposes of determining the outer limits of the class represented by the named plaintiffs in this case is the ninety days prior to the filing of a complaint of discrimination with the E.E.O.C. They rely on the case of *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239 (3rd Cir. 1975), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975), and adopt as their own the rationale set forth in that case. The position taken in *Wetzel* has been followed by the district courts in the Third Circuit [1] and by at least two other district courts as well.[2]

The rationale of *Wetzel* is clear and uncomplicated. In *Wetzel* the court succinctly concludes that:

"A plaintiff may bring a class action on behalf of those who have not filed charges with the EEOC. . . . This tolls the statute of limitations for all members of the class. . . . But Wetzel and Ross [the named plaintiffs in this action] cannot represent those who could not have filed a charge with the EEOC at the time they filed their charges. . . ." (citations omitted) 508 F.2d 246.

This position, for all of its straightforwardness and apparent simplicity, raises a major practical problem if the enforcement of Title VII is to achieve the broad remedial impact intended. This difficulty and the general approach to Title VII cases in the Fifth Circuit has led at least one district court in Georgia to reject the *Wetzel* approach. *Sinyard v. Foote and Davies,* 13 FEP Cases 1257 (N.D.Ga.1975).

The problem created by the *Wetzel* approach is this. While the ninety-day time limit is one of the time limits to be applied in Title VII cases, there are a number of reasons why courts have tolled the running of time limits as to individual claimants.[3]

1. See *Presseison v. Swarthmore College,* 71 F.R.D. 34 (E.D.Pa.1976); *Jones v. United Gas Improvement Corp.,* 68 F.R.D. 1 (E.D.Pa.1975), and *Marshall v. Electric Hose and Rubber Co.,* 68 F.R.D. 287 (D.Del.1975).

2. *Martinez v. Bechtel Corp.,* 10 EPD 10,570 (N.D.Cal.1975); and *Lamphere v. Brown University,* 71 F.R.D. 641 (D.R.I.1976).

3. See *Pittman v. Anaconda Wire and Cable Co.,* 408 F.Supp. 286 (E.D.N.C.1974), and *Lattimore*

An arbitrary use of the ninety-day time limit would conceivably deny relief to some individuals who, in fact, would qualify for an award of back pay. On the other hand, an attempt to identify such individuals prior to trial would be difficult, time consuming, and present the Court with an unnecessary burden if the plaintiffs fail to prevail on the merits.

Evidence of employment practices will have to be offered covering the two-year period prior to the filing of the initial complaint with the E.E.O.C. in any event since there are named plaintiffs who apparently have claims covering this entire period. If the plaintiffs prevail, then the matter of individual eligibility for back pay and the amount to be awarded to members of the class may be considered in an orderly fashion.

▮ It has been stipulated that the award of back pay, if the plaintiffs prevail, be considered at a second stage of this litigation. At the second stage, each member will be given an opportunity to file proof of his individual claim for damage, and objection may be made to the entitlement for any reason, including, but not limited to, the contention that the claim is barred by the failure to file within the ninety-day limit. It is proper, therefore, for the class in question to be defined to include individuals within the two-year limit set forth in Title VII.

▮ There remains the question of when an initial claim of discrimination was filed against the defendant unions. The plaintiffs assert that the complaint filed on August 19, 1969, includes charges against the unions. The wording of the complaint itself, however, belies that interpretation. The complaint refers only to grievances concerning "Western Electrics [sic] employment practices." No mention is made of activities by the defendant unions. The plaintiffs do not cite nor was the Court able to discover any cases in support of the plaintiffs' proposition. Therefore, although a single class will be defined at this time, liability as to the unions for any back pay awards which may be made under Title VII in this case will date back only to February 3, 1969, two years prior to the first complaint filed with the E.E.O.C. in which charges were lodged against the unions.

The defendants raise the option of defining two classes or sub-classes of plaintiffs based upon the differing time limits to be applied under Title VII and 42 U.S.C. § 1981.[4] Even if the position of the defendants were to be adopted by the Court, a division of classes would not be helpful nor necessary at this time. It too is an issue that is more appropriately addressed in sorting out the evidence when presented and in determining the nature of relief to be granted, if and when the plaintiffs prevail on the merits.

In defining the class, the Court will continue to exercise its authority, pursuant to Rule 23, Federal Rules of Civil Procedure, to enter a conditional definition which may be altered or amended before a decision on the merits, should good cause for such revision be shown.

### ORDER

It is hereby ORDERED for the reasons set forth in the accompanying Memorandum that the May 2, 1974, Order of this Court defining the class to be represented by the named plaintiffs shall be, and the same now is, amended to read as follows:

It is hereby ORDERED that this action be and the same is hereby allowed to proceed as a class action consisting of all black persons since August 19, 1967, who have been denied employment, who are employed and who might be employed by the defendant Western Electric Compa-

---

v. *Loews Theatres, Inc.,* 410 F.Supp. 1397 (M.D.N.C.1975).

**4.** Their position is consistent with the holding in *Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975).

The plaintiffs, however, assert that to apply the ruling in *Johnson* would be to apply it retroactively since this case was filed in 1973. *Bush v. Wood Brothers Transfer, Inc.,* 398 F.Supp. 1030 (S.D.Tex.1975).

ny, Inc., at its facilities in Alamance County, North Carolina, who are or have been limited, classified, restricted, discharged, excluded or discriminated against by the defendants in ways which deprive or tend to deprive them of employment opportunities and otherwise affect their status as employees or applicants for employment because of their race or color. This ruling is conditional and may be altered or modified at any stage prior to final determination of the action on the merits.